IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA MYLES, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA HEALTH | : | NO.  10-4118 |
| SYSTEM, d/b/a/ UNIVERSITY OF | : | |
| PENNSYLVANIA HOSPITAL | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                                  December 12, 2011

Defendant University of Pennsylvania Health System d/b/a University of Pennsylvania Hospital ("Defendant") filed the present Motion for Summary Judgment against Plaintiff Carla Myles ("Plaintiff") on all claims.  For the following reasons, the Motion is denied.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was hired by Defendant in February 2003 to work as a customer service representative.  (Pl.'s Resp. Opp'n, Ex. B 4-5.)  In 2004, she was diagnosed with irritable bowel syndrome ("IBS"), which caused cramps, stomach aches, and diarrhea.  (Id., Ex. A, Dep. of Carla Myles ("Myles Dep."), 110:4-10, 44:6-9, June 6, 2011)  As a result of this condition, Plaintiff applied for leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA").  (Myles Dep. 50:25-51:4)  Plaintiff's leave commenced in April 2004, was mostly intermittent in nature, and continued until the end of her employment.  (Id.; Def.'s Mem.

Supp. Mot. Summ. J. ("Def.'s Mem."), Exs. G ¶ 6, H 11:1-4.)[1]

In January 2008, Defendant implemented its Performance Improvement and Progressive Steps policy ("the Policy"). (Def.'s Mem., Ex. J.) Pursuant to the Policy, an employee's performance issues, absences, or instances of tardiness are addressed through five sequential Progressive Steps: Coaching, First Written Warning, Second Written Warning, Final Warning, and Termination. (Id.) A Progressive Step remains active for a period of one year; if the employee has another performance or attendance issue while a previous Progressive Step is still active, he or she will receive the next level of discipline. (Id.) This process continues until the termination level is reached. (Id.)

In February 2008, Plaintiff was asked by Defendant's agents to submit to an independent medical examination ("IME") to verify her need for FMLA leave. (Myles Dep. 128:6-18.) Also in February, Plaintiff was given her first formal written discipline under the newly-implemented Policy – the Coaching – for five instances of lateness. (Pl.'s Resp. Opp'n, Ex. P.) On March 6, 2008, Plaintiff received her First and Second Written Warnings under the Policy, also for lateness. (Id., Ex. NN.) The First and Second Written Warnings – but not the Coaching – stated that they would be rescinded upon approval of Plaintiff's FMLA paperwork. (Id., Exs. P & NN.)

On April 3, 2008, Plaintiff's IME was performed by Dr. Barry Corson. (Id., Ex. U.) Dr. Corson found that Plaintiff appeared to have experienced IBS "for at least the last three or four years," but he did not specifically comment on whether Plaintiff needed FMLA leave as a result of this condition. (Id.) On April 14, 2008, Plaintiff was given her fourth disciplinary document –

---

[1] Beginning in 2007, Plaintiff received additional FMLA leave for anxiety and depression. (Myles Dep. 55:6-15.)

the Final Warning – for unexcused absences. (Id., Ex. OO.)

On May 23, 2008, Plaintiff was notified by Maribel Fernandez, Defendant's Senior Benefits Specialist, that she would have to undergo a second IME with Dr. Jeffrey Retig. (Id., Ex. I.) Dr. Retig, a certified gastroenterologist, examined Plaintiff on June 26, 2008. He found that Plaintiff's symptoms were consistent with IBS, and that he could not discount the possibility that they were disabling enough to miss work. (Id., Ex. W.) He also noted, however, that she had not been properly medicated prior to May 2008, and suggested that her symptoms could be controlled with therapy. (Id.) On July 28, approximately one month after her visit with Dr. Retig, Plaintiff was approved for intermittent FMLA leave, which was applied retroactively to January 24, 2008 and extended until August 28, 2008. (Id., Ex. PP.)

In August 2008, Plaintiff received two separate disciplinary documents: one for lateness and another one for performance-related issues.[2] (Id., Exs. R & S.) Apparently, Plaintiff's retroactive approval for FMLA leave rescinded all previous disciplinary measures except for her Coaching, as the documents she received in August were marked "First Written Warning" and "Second Written Warning." (Id.) Several months later, on February 27, 2009, Plaintiff requested approximately five weeks of FMLA leave in March for a surgery, which was approved. (Id., Ex. BB.) That same day, Plaintiff was given her Final Warning for lateness. (Id., Ex. L.)

Finally, on March 10, 2009, Plaintiff was terminated from her position with Defendant. The termination letter stated that Plaintiff received a Coaching for lateness in February 2008, her

---

[2] As a customer service representative, Plaintiff was required to have a "phone time average" of 88%. (Myles Dep. 107:3-13.) This meant that Plaintiff was expected to be available to take calls from customers 88% of the time she was at work. (Def.'s Mem., Ex. E ¶ 4.) If she failed to maintain that average for five or more days over the course of a month, she could be subject to discipline. (Id., Ex. C 89:5-90:3.)

First and Second Written Warnings for lateness and unacceptable phone averages in July 2008, and her Final Written Warning for lateness in February 2009. (Id., Ex. K.) The letter also stated that Plaintiff had unacceptable phone time averages on February 2, 3, 4, 5, and 6, and that "[t]he February phone time results in the termination of your employment effective today." (Id.) The termination occurred exactly one day before Plaintiff's extended FMLA leave was supposed to have commenced. (Id., Exs. K, BB.)

Plaintiff filed her Complaint in this Court on August 16, 2010. The Complaint alleges the following: (1) Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her for exercising those rights (Count I); (2) Defendant unlawfully retaliated against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA") (Count II); (3) Defendant discriminated against Plaintiff when it terminated her because of health problems, in violation of the ADA (Count III); and (4) Defendant's unlawful termination of Plaintiff violated the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951 et seq., ("PHRA") (Count IV). (Compl. ¶¶ 23-42.) On August 5, 2011, Defendant filed the present Motion for Summary Judgment. Plaintiff filed her Response in Opposition on September 15, 2011. Defendant filed a Reply on October 7, 2011, and Plaintiff filed a Sur-Reply on October 24, 2011.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Summary judgment may be granted when "the evidence is merely colorable . . . or is not significantly probative." Id. at 249-50 (citations omitted).

III.   DISCUSSION

    A.   **Plaintiff's FMLA Interference and Retaliation Claims**

The FMLA entitles an eligible employee[3] to take up to twelve weeks of leave during any twelve-month period when a serious health condition renders the employee unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1)(D). This entitlement includes "intermittent leave," which is "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks." 29 C.F.R. § 825.800. Employers are prohibited "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c); see also 29 U.S.C. § 2615(a). Terminating an employee who makes "a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

When analyzing retaliation claims under the FMLA, courts apply the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Parker v. Verizon Pa., Inc., 309 Fed. Appx. 551, 555 (3d Cir. 2009). Under the McDonnell Douglas scheme,

> (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination.

Id. (citing McDonnell Douglas, 411 U.S. at 802).

---

[3] An eligible employee is one "who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Neither party disputes that Plaintiff is an eligible employee.

In Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135 (3d Cir. 2004), the Third Circuit held that an employee who makes a claim for discrimination under the FMLA must prove that: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Id. at 146. The employer must then articulate an explanation "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The burden then shifts to the plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764. To satisfy the first test, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken." Id. at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence . . . .'" Id. (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)). A plaintiff can defeat summary judgment under the second test by showing that the employer has "'(1) . . . previously discriminated against the plaintiff, (2) . . . discriminated against other people who engaged in the same protected activity as plaintiff or has discriminated against other people within another protected class or (3) . . . treated more favorably similarly situated persons who did not engage in plaintiff's protected activity.'" Atchison v. Sears, 666 F. Supp. 2d 477, 495 (E.D. Pa. 2009) (quoting Paul v. UPMC Health Sys., No. Civ.A.06-1565, 2009 WL 699943, at *19 (W.D. Pa. Mar. 10, 2009)).

A claim for interference, on the other hand, "is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Callison v. City of Phila., 430 F.3d 117, 120 (3d Cir. 2005). As such, application of the McDonnell Douglas burden-shifting scheme is not required for an FMLA interference claim. Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006). Rather, the burden is on the plaintiff to demonstrate that:

> (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA.

DiSantis v. Morgan Props. Payroll Servs, Inc., No. Civ.A.09-6153, 2010 WL 3606267, at *10 (E.D. Pa. Sept. 16, 2010) (citing Mascioli v. Arby's Rest. Grp., Inc., 610 F. Supp. 2d 419, 429-30 (W.D. Pa. 2009)).

Here, Plaintiff alleges that Defendant both interfered with her rights and retaliated against her in the following five ways: (1) requiring her to see a doctor of Defendant's choosing; (2) continuously questioning her health problems; (3) preventing her from taking intermittent and block FMLA leave; (4) treating her in a hostile manner because she exercised her FMLA rights; and (5) terminating her because of her FMLA-qualifying absences or to prevent her from exercising her FMLA rights in the future. (Compl. ¶ 29.)

Defendant argues that application of the McDonnell Douglas scheme warrants entry of summary judgment on Plaintiff's FMLA retaliation claim. (Def.'s Mem. 28-37.) First, it contends that Plaintiff was terminated "because she had numerous unexcused, unprotected instances of tardiness and because she failed to meet the objective phone time requirements of

her position – nothing more." (Id. at 29.) As such, under the first prong of McDonnell Douglas, there is no evidence Plaintiff experienced any discrimination or retaliation as a result of taking FMLA leave. (Id.) Second, Defendant argues that Plaintiff was terminated pursuant to the Policy because of her excessive tardiness and failure to maintain sufficient phone time averages, which constitute legitimate, non-discriminatory reasons for its actions. (Id. at 30-32.) Third, Defendant contends that Plaintiff cannot show that its purported reasons for terminating her were pretext. (Id. at 32-37.) In support of this argument, Defendant avers that (i) even though it required Plaintiff to submit to an IME, this did not impact her ability to take FMLA leave; (ii) Plaintiff's FMLA leave was not factored into the calculation of her phone time average; (iii) Plaintiff never cited her IBS as a reason for her poor performance; (iv) the people responsible for her termination were not aware of her medical conditions; and (v) Plaintiff was provided with leave every time she requested it. (Id. at 34-36.) Finally, Defendant argues that Plaintiff's interference claim must fail because Plaintiff would have been terminated regardless of whether she exercised rights under the FMLA. (Id. at 39-40.)

In response, Plaintiff argues that a reasonable jury could conclude that Defendant retaliated against her for exercising her FMLA rights for the following reasons: (i) Plaintiff was terminated around the time she engaged in protected activity; (ii) when disciplining Plaintiff for missing work and having an insufficient phone time average, Defendant counted protected activity; (iii) Defendant treated Plaintiff with "extensive antagonism" during her last year of employment; and (iv) Plaintiff's supervisor expressed discriminatory views about her FMLA and

perceived disability. (Pl.'s Resp. Opp'n 44-45.)[4] Plaintiff's arguments in support of her interference claim are largely the same, but she also contends that Defendant interfered with her rights by requiring her to submit to a second independent medical evaluation in violation of 29 U.S.C. § 2613, and to submit certifications for her leave every thirty days – instead of every three months – in violation of 29 C.F.R. § 825.308(b). (Id. at 28-30.)

After reviewing the evidence submitted by both parties, the Court finds that Defendant has demonstrated a legitimate, non-discriminatory reason for terminating Plaintiff. In addition to the five Progressive Steps Plaintiff received pursuant to the Policy which resulted in her termination, (see Def.'s Mem., Exs. B-23, B-24, B-25, B-26, B-27), Defendant has also submitted evidence that Plaintiff was disciplined on multiple occasions between 2003 and 2007 for attendance and performance issues. (Id., Exs. B-13, B-14, B-18, B-22.)[5] These written documents consistently support Defendant's argument that Plaintiff was terminated because of her inability to fulfill the requirements of her position, not because she had taken FMLA leave.

On the other hand, Plaintiff has presented her own evidence that establishes a prima facie case of discrimination and creates a question of fact as to whether Defendant's legitimate, non-discriminatory reason for terminating her was merely pretext. As noted above, Plaintiff argues

---

[4] Plaintiff's Response in Opposition includes a Certification, which purports to supplement her deposition testimony. (Pl.'s Resp. Opp'n, Ex. FF.) Defendant argues that this document should be disregarded because it is a "sham affidavit," which contradicts Plaintiff's prior deposition testimony. (Def.'s Reply Br. 3-7.) Because the Court finds sufficient evidence from Plaintiff's deposition transcript and other documents upon which to base its decision, it does not consider the Certification. Accordingly, the Court declines to address Defendant's sham affidavit argument.

[5] Although the disciplinary actions prior to 2008 were apparently not factored into the ultimate decision to terminate Plaintiff, they are relevant to Defendant's argument that Plaintiff had performance issues unrelated to her disability.

that some of the absences for which she was disciplined should have been considered FMLA leave and, as a result, she was terminated for engaging in protected activity. Plaintiff's deposition testimony supports this argument.[6] On multiple occasions, Plaintiff testified that she asked Barbara Grozio, her supervisor, to exclude her IBS-induced bathroom breaks when calculating her phone time averages. (See Myles Dep. 52:16-21) ("[W]hen I was working and I would have symptoms, I did request to [Ms. Grozio] to take that into consideration as far as my phone time, as far as writing me up for my phone time being low, because I, you know, would be in the bathroom."); (id. at 66:22-67:2) ("I remember being written up for my phone time and again I explained to Barbara Grozio the reason for my phone time being so low. I would have episodes and I'd have to go to the bathroom."); (id. at 114:10-12) ("I did inform [Ms. Grozio] of the reason why my phone time was the way it was, because of my issue with IBS."); (id. at 108:12-15) (explaining again that she told Ms. Grozio her phone time averages were low because "I had to go to the bathroom and I had to wait till my symptoms subsided before I could go back to my desk and begin taking calls again".)

Furthermore, Plaintiff's Coaching, First Written Warning, Second Written Warning, and Final Written Warning all included a section for Plaintiff's signature, acknowledging that she had been disciplined. (Def.'s Mem., Exs. B-23, B-24, B-25, B-26.) Plaintiff refused to sign all of

---

[6] Defendant contends that Plaintiff's testimony amounts to nothing more than "self-serving allegations" and should therefore not be given any weight. (Def.'s Mem. 33-34.) The Court disagrees. While Defendant may dispute the veracity of Plaintiff's testimony, it is nevertheless based on Plaintiff's first-hand knowledge of the events surrounding her employment and termination. Accordingly, it is admissible evidence. See James v. Allentown Bus. Sch., No. Civ.A.01-857, 2003 WL 21652189, 8 n.9 (E.D. Pa. June 2, 2003) ("[W]hile mere conclusory allegations and suspicions are insufficient, a party's sworn testimony setting forth detailed factual allegations based upon first-hand knowledge does constitute admissible evidence which may demonstrate a genuine issue of material fact.").

these documents, claiming that Defendant's disciplinary actions were related to her request for FMLA leave. Specifically, with respect to the Coaching, she stated that she "believed it to be unfair. [Ms. Grozio] has on here the date of February 5, 2008. That's during the time when I had turned in my paperwork to renew for my IBS, my FMLA for IBS, and she wrote me up for that." (Myles Dep. 115:19-23.) Next, she indicated that she refused to sign the First Written Warning because "I felt it was unfair. Again, this was during the time when they had denied my FMLA claim and they were sending me to doctors, and I was under a tremendous amount of stress, and [Ms. Grozio] continued to write me up." (Id. at 118:7-11.) Plaintiff took issue with the Second Written Warning because "this was during the time in 2008 they had not approved my FMLA paperwork, they were giving me the run-around sending me to doctors for IMEs, and naturally I was not performing up to my best ability. And the stress of the situation during this time actually increased my symptoms, my problems, with IBS." (Id. at 119:22-120:5.) Finally, Plaintiff stated that she refused to sign the Final Written Warning because the days for which she was disciplined were either related to her FMLA or, in one instance, occurred on a date where her lateness was caused by public transportation. (Id. at 121:8-123:2.)

      The nature of intermittent FMLA leave and Plaintiff's health condition make disposition of the FMLA claims inappropriate at the summary judgment stage. For the duration of much of Plaintiff's employment, she was routinely approved for three-month blocks of intermittent leave. This meant that whenever her IBS symptoms were aggravated – which apparently was sporadic and unpredictable – Plaintiff could invoke her leave and have the time she missed from work count as protected activity. The issue of when precisely she notified Defendant that she was availing herself of FMLA leave is disputed in this case. If a jury believes the testimony discussed

above,[7] it could find that Plaintiff asked her employer to include her IBS-related bathroom breaks as part of her pre-approved FMLA leave, but that Defendant ignored that request and disciplined her for missing time that should have been protected. Such a finding may lead the jury to conclude that Defendant interfered with Plaintiff's FMLA rights and/or retaliated against her for invoking those rights. Therefore, Defendant's Motion for Summary Judgment on these claims is denied.

### B. Plaintiff's ADA and PHRA Claims[8]

#### 1. Discrimination

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As with FMLA retaliation, ADA discrimination claims are analyzed under the McDonnell Douglas burden-shifting framework. Parker, 309 Fed. Appx. at 555.

In order to demonstrate a prima facie case of discrimination under the ADA, the plaintiff must show the following: "(1) he is a disabled person within the meaning of the ADA; (2) he is

---

[7] Ms. Grozio disputes Plaintiff's account of the facts. In her Verified Statement, she states that "Ms. Myles never indicated to me that her insufficient phone time averages were in any way related to a medical condition," and that "Ms. Myles' absences for which she was disciplined were unrelated to her FMLA leave." (Def.'s Mem., Ex. E ¶¶ 6, 7) These conflicting versions of events creates an issue of material fact.

[8] The ADA and PHRA provide similar relief and "'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (quoting Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)). As such, Plaintiff's ADA and PHRA claims are analyzed concurrently.

otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Techs., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)).  Defendant argues that Plaintiff has failed to establish a prima facie case because she cannot satisfy any of these criteria. (Def.'s Mem. 16.)  The Court considers each in turn.

    a.  **Whether Plaintiff is Disabled Within the Meaning of the ADA**[9]

Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Bowel functions and working are included among the statutorily-defined list of major life activities. 42 U.S.C. § 12102(2).  To determine whether a plaintiff is "substantially limited" in performing a major life activity, courts consider: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

---

[9] Congress passed the ADA Amendments Act of 2008 ("ADAAA") in an effort to promote a less restrictive interpretation of "disability." Pub. L. No. 110-325, § 2(b)(1)-(6), 122 Stat. 3553, 3555 (2008).  The ADAAA went into effect on January 1, 2009. Garvin v. Progressive Cas. Ins. Co., No. Civ.A.08-3758, 2010 WL 1948593, at *4 n.4 (E.D. Pa. May 10, 2010). The parties dispute whether the Court should apply this version of the Act or the pre-ADAAA version of the Act. (See Def.'s Mem. 16 n.13; Pl.'s Resp. Opp'n 1 n.2, 30-31.)

  Despite Defendant's arguments to the contrary (see Def.'s Mem. 16 n.13, Def.'s Reply Br. 12-13), it is abundantly clear that Plaintiff's ADA claims stem from her termination in March 2009, not from the IMEs she was required to attend in 2008.  While Plaintiff may have cited to the IMEs during her deposition as examples of why she felt Defendant was discriminating against her, the sole discriminatory act which forms the basis of her legal cause of action is the termination itself. (Pl.'s Resp. Opp'n 30-31; Compl. ¶¶ 31-37.)  Therefore, the ADAAA applies in this case.

Namako v. Acme Mkts., Inc., No. Civ.A.08-3255, 2010 WL 891144, at *4 (E.D. Pa. Mar. 11, 2010) (quoting Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179-80 (3d Cir. 2005) (citing 29 C.F.R. § 1630.2(j)(2)).  Whether an individual is substantially limited in a major life activity is a question of fact.  Carraway v. Borough of Wilkinsburg, No. Civ.A.9-372, 2009 WL 2981955, at *1 (W.D. Pa. Sept. 11, 2009) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 763 (3d Cir. 2004)).

Defendant argues that Plaintiff has failed to produce any evidence that her IBS, depression, or anxiety substantially limit any of her major life activities.  (Def.'s Mem. 17.)  It notes that Plaintiff has been taking medication that helps control the symptoms of her IBS since 2008, prior to her termination in March 2009.  (Id.)[10]  Defendant also contends that Plaintiff's anxiety and depression do not constitute disabilities under the ADA because Plaintiff testified that these conditions "impact her life only because they affect her work performance."  (Id. at 19.)  In response, Plaintiff argues that her IBS, depression, and anxiety had been certified by medical specialists, that she suffered from these conditions daily and weekly, and that they were periodically incapacitating, requiring her to miss anywhere from three to five days of work per week from 2004 through 2009.  (Pl.'s Resp. Opp'n 34.)

The Court finds that Plaintiff has submitted sufficient evidence for a jury to conclude that her health condition substantially limited a major life activity, namely, her ability to work and control her bowel functions.  In connection with her requests for FMLA leave, Plaintiff routinely

---

[10] In support of this argument, Defendant avers that during the same deposition in which Plaintiff testified that cheese and mayonnaise trigger her IBS, she ate a sandwich which included these ingredients.  (Def.'s Mem. 17-18.)  Plaintiff claimed that taking her probiotics pill enabled her to eat the food without problem.  (Id. at 18.)

submitted certifications from her doctor indicating that she had a serious medical condition. Even Dr. Retig, to whom Defendant sent Plaintiff for her IME, stated that Plaintiff's symptoms – though subjective in nature – could have been disabling enough to require her to miss work. (Pl.'s Resp Opp'n, Ex. W.)  Therefore, the Court cannot grant Defendant's Motion for Summary Judgment on the basis that Plaintiff failed to demonstrate a disability within the meaning of the ADA.[11]

### b. Whether Plaintiff Was Qualified for Her Position

Under the ADA, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Whether an accommodation is reasonable is a question of fact. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006).

Here, Defendant argues that Plaintiff was not qualified for her job because her absences were not excused and she could therefore not satisfy the performance and attendance requirements.  (Def.'s Mem. 22-23.)  In response, Plaintiff contends that there are questions of fact concerning (i) whether her absences should have been excused; and (ii) whether she could

---

[11] Because the Court concludes that Plaintiff has submitted sufficient evidence of an impairment that substantially limits a major life activity, it need not consider whether she has established a record of such an impairment or was regarded as having such an impairment.

have performed her job with or without a reasonable accommodation. (Pl.'s Resp. Opp'n 37-38.) The Court agrees. When specifically asked whether she requested an accommodation for her IBS, Plaintiff testified that "when I was working and I would have symptoms, I did request to [Ms. Grozio] to take that into consideration as far as my phone time, as far as writing me up for my phone time being low, because I, you know, would be in the bathroom." (Myles Dep. 52:16-21.) Ms. Grozio denies that Plaintiff ever made such a request. (Def.'s Mem., Ex. E ¶ 6.) Accordingly, there are questions of fact concerning whether Plaintiff did indeed ask for an accommodation and, if so, whether such an accommodation – which can best be described as a modification of work schedule – was reasonable.

### c.    Whether Plaintiff Was Terminated Because of Her Disability

Defendant argues that Plaintiff cannot prove she was terminated as a result of her disability because she was fired for the legitimate, non-discriminatory reasons of poor attendance and phone time averages and because the people responsible for her termination were not aware that she had a disability. (Def.'s Mem. 24-26.) As discussed above in conjunction with Plaintiff's FMLA retaliation claim, however, there is a question of fact as to whether some of the time for which Plaintiff was disciplined – and which contributed to her termination – should have been classified as protected leave. Furthermore, Plaintiff and her boss, Ms. Grozio, offer conflicting accounts about what, if anything, Ms. Grozio knew about Plaintiff's IBS, creating an additional factual question. If a jury finds that Plaintiff requested a reasonable accommodation when she asked that her bathroom breaks not be counted against her phone time average, but that Defendant ignored the request and counted those breaks anyway, it could conclude that Defendant discriminated against Plaintiff in violation of the ADA and PHRA. As such,

Defendant's Motion for Summary Judgment on the ADA and PHRA discrimination claims is denied.

### 2. Retaliation

To demonstrate a prima facie case of retaliation under the ADA, the plaintiff must show: "'(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

Defendant alleges that Plaintiff never requested an accommodation or engaged in any other form of protected activity, and therefore her ADA and PHRA retaliation claims must fail. (Def.'s Mem. 26-28.) As noted above, however, when Plaintiff was explicitly asked during her deposition whether she ever sought an accommodation from Defendant, she replied that she asked Ms. Grozio not to take her IBS-related bathroom breaks into consideration when calculating her phone time average. Although Ms. Grozio may deny that Plaintiff ever made such a request, her testimony cannot be given more weight than Plaintiff's at the summary judgment stage. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's ADA and PHRA retaliation claims is denied.

### IV. CONCLUSION

For all of the foregoing reasons, the Court finds that Defendant has introduced evidence that Plaintiff was terminated for a legitimate, non-discriminatory reason. Nevertheless, there are several issues of material fact which, if resolved in Plaintiff's favor, may lead a reasonable jury

to find that Defendant's reason for terminating her was mere pretext for discrimination. First, in calculating Plaintiff's absences and phone time average, it is unclear whether Defendant considered time which should have been marked as FMLA leave. Second, there are factual questions concerning whether Plaintiff was disabled within the meaning of the ADA, requested a reasonable accommodation for her disability, and could perform her job with or without such accommodation. Accordingly, Defendant's Motion for Summary Judgment is denied.

  An appropriate Order follows.